UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| ROSE BACHELDER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-436-JAW |
| | ) | |
| SOCIAL SECURITY ADMINISTATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION

The Social Security Administration Commissioner found that Rose Bachelder, a woman in her mid-40s, has severe limitations associated with left foot drop, need for a foot brace, ambulatory difficulties, and pain arising from degenerative disk disease and bilateral hip bursitis that preclude her from returning to her past relevant housekeeping work at Sugarloaf Mountain, but not from returning to a subset of sedentary light work existing in significant numbers in the national economy, resulting in a denial of Bachelder's application for disability benefits under the Social Security Act.[1]  Bachelder commenced this civil action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), alleging errors at Steps 2 and 3 and an absence of substantial evidence in support of the Administrative Law Judge's residual functional capacity finding.  I recommend that the Court vacate and remand with respect to the Title XVI claim for supplemental security income, but affirm with respect to the Title II claim for disability insurance benefits.

---

[1]    The Administrative Law Judge treated Bachelder's appeal as arising under Title XVI and not Title II, though Bachelder applied under both Titles.  (Exs. 1D, 1E.)

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

The decision under review is the April 8, 2009, decision of the Administrative Law Judge. The Administrative Law Judge found, at Step 2, that Bachelder has severe impairments in the form of degenerative disk disease and bilateral hip bursitis. (Finding 2, R. 12.) Bachelder's spinal condition[2] results in foot drop, which the Administrative Law Judge also considered as severe, having more than a minimal effect of her ability to perform work-related activities. (Id.) The Administrative Law Judge found that mental health symptoms (anxiety and affective disorder) were not severe for purposes of Step 2, which is one of the errors alleged by Bachelder. (Id.; Statement of Errors at 12, Doc. No. 16.)

---

[2] Bachelder's spinal conditions include foraminal stenosis, hypertrophic facet disease, and disc herniation at the L3-4. Bachelder underwent a surgical procedure July 20, 2007 (laminectomy and foraminotomy at the L4-5 level) to relieve nerve root compression. (Ex. 4F, R. 243-44, 247, 250.) An October 2007 letter from Dr. Douglas Pavlak, M.D., states that pain associated with nerve compression resolved post-operatively, but that foot drop and foot weakness have persisted and that hip discomfort has arisen "because she is walking differently and has been for some time." (Ex. 5F, R. 251.) Preoperative notes indicate that denervation and foot drop were the primary concerns rather than radicular pain. (Id., R. 259.)

2

At Step 3, the Administrative Law Judge found that Bachelder's combination of impairments does not meet Listing 1.04 because "there is no evidence of (A) nerve root compression with positive straight leg raising test sitting and supine; (B) spinal arachnoiditis; (C) spinal stenosis resulting in pseudoclaudication and resulting in inability to ambulate effectively." (Finding 3, R. 12-13.) The Administrative Law Judge rejected a contrary opinion offered by Dr. Ho, which is Bachelder's second point of alleged error. (Statement of Errors at 9-12.)

At Step 4, the Administrative Law Judge found a residual functional capacity (RFC) enabling less than the full-range of light work, described as occasional lifting of 20 pounds, standing or walking for no more than 2 hours (non-constant) in a full 8-hour workday, no constant forceful pushing or pulling using foot controls with the left leg, and no use of ladders, ropes or scaffolds, with only occasional use of ramps or stairs. (Finding 4, R. 13.) Bachelder assigns error to this finding, arguing that it should have included mental health limitations associated with concentration and pace (Statement of Errors at 12-13) and that substantial evidence does not support the Administrative Law Judge's physical RFC finding because it depended on an outdated DDS assessment (id. at 6-8).

At Step 5, the Administrative Law Judge found that Bachelder could perform other substantial work existing in significant numbers, including two representative jobs titled charge account clerk and final assembly, each with approximately 200 jobs in Maine. (Finding 9, R. 16.) Although Bachelder objects to this finding, her challenge depends on the errors she alleges in regard to Steps 2 through 4. She does not argue that the representative jobs are inconsistent with the RFC fashioned by the Administrative Law Judge or with the data contained in the Dictionary of Occupational Titles.

## A. Step 2

At Step 2, the Commissioner must consider the medical severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe medically determinable physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairment must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. §§ 404.1509, 416.909. The claimant's burden at Step 2 is a *de minimis* burden, designed to do no more than screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination at Step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At Step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. §§ 404.1528(a), 416.928; Social Security Ruling 85-28.

Bachelder alleges that the Administrative Law Judge erred by failing to take into consideration a mental impairment questionnaire completed by Kathleen Danforth, LCPC, who had three counseling sessions with Bachelder between December 15, 2008, and January 12, 2009. (Ex. 32F, R. 499.) This presents a Step 2 issue. The Administrative Law Judge explained that he relied on the December 21, 2007, Psychiatric Review completed by Dr. Scott W. Hoch, Ph.D., who opined that Bachelder's treatment records from June 15, 2007, through December

4

2007[3] reflect a medically determinable impairment of anxiety (not otherwise specified), albeit one that was "not severe." (Ex. 8F, R. 293, 298.) Dr. Hoch opined that Bachelder had experienced only mild "factor B" limitations and no episode of decompensation. (R. 303.) The Administrative Law Judge relied on this exhibit to conclude that no severe mental limitation was present. (R. 12.)

Bachelder complains that the Administrative Law Judge simply ignored LCPC Danforth's answers to the Questionnaire. The Commissioner indicated at oral argument that Danforth's answers are insufficient evidence for purposes of demonstrating an impairment. Bachelder responded at oral argument that Danforth's answers are acceptable for purposes of showing the severity of her mental impairment and that Danforth's opinion can "piggy-back" on Dr. Hoch's finding that Bachelder's medical records demonstrate an anxiety impairment that is not severe. According to Bachelder, it was error to ignore Danforth's description of her mental impairment because Dr. Hoch concluded a mental impairment was demonstrated. The Commissioner's regulations provide that an impairment can only be demonstrated with evidence from "an acceptable medical source." Under this regulation, licensed clinical professional counselors and other "paraprofessionals" like physician's assistants are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), 416.913(a). Although such paraprofessionals are not acceptable medical sources for purposes of establishing the existence of an impairment, they are suitable sources for establishing the severity of mental impairments already established. Id. §§ 404.1513(d), 404.1520a, 416.913(d), 416.920a; see also SSR 06-03p. In this case, all of the treatment records

---

[3] These appear to have consisted of two reports, one from June 2007 and one from September 2007. (R. 305.)

concerning mental health issues were created by either PA Seabold or LCPC Danforth without an indication that a physician signed off on the findings.

It is Bachelder's perspective that her counselor should be able to provide evidence of the severity of her mental health issue after a consulting physician for the Disability Determination Services (DDS) has opined that her treatment records demonstrate (based on reports authored by a physician's assistant) an anxiety impairment, albeit a non-severe impairment. However, the assessments of state agency medical consultants, as statements by non-examining physicians, must be based on an acceptable medical source's findings, meaning they cannot be substituted for evidence from acceptable medical sources. Colson v. Barnhart, No. 02-108-B, 2003 WL 1092745, *3, 2003 U.S. Dist. Lexis 3695, *7 (Mar. 13, 2003) (citing 20 C.F.R. §§ 404.1513(c), 416.913(c)), aff'd 2003 WL 1956243, 2003 U.S. Dist. Lexis 6907 (Apr. 24, 2003). Thus, Dr. Hoch's assessment does not provide a foundation on which LCPC Danforth's opinions about severity can be grounded.[4] For this reason, the Administrative Law Judge did not err when he failed to address LCPC Danforth's answers to the questionnaire, there being no evidence from an "acceptable medical source" of a mental impairment. For purposes of Step 2, Dr. Hoch's opinion provides substantial evidence to the effect that Bachelder did not have a severe medically determinable mental impairment as of the date of his assessment. Bachelder fails to carry her

---

[4] There are additional foundational concerns here because Dr. Hoch indicated that the treatment records suggested the presence of anxiety, whereas LCPC Danforth described a mood disorder (R. 499). Also, none of the underlying reports are in the record.
    In Leary v. Barnhart, No. 04-98-B-W, 2004 WL 2862160, *3, 2004 U.S. Dist. LEXIS 24997 *5-*8 (D. Me. Dec. 13, 2004), aff'd 2005 WL 32795, 2005 U.S. Dist. Lexis 150 (Jan. 4, 2005), this Court determined that an assessment of the severity of mental impairments was required where a physician stated in a letter to claimant's counsel that a mental impairment was demonstrated in the record and where the DDS consultants opined that a non-severe mental impairment was demonstrated. The instant case lacks an "acceptable medical source" opinion, unlike Leary.

burden of proving the existence of a mental impairment with evidence from an acceptable medical source.

**B.	Step 3**

Impairments identified as "severe" at Step 2 are measured at Step 3 against the Commissioner's Listing of Impairments to determine if they are severe enough to automatically qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (describing satisfaction of a listing as calling for a conclusive presumption of a disabling impairment); Singh v. Apfel, 222 F.3d 48, 451 (8th Cir. 2000) ("If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience."). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The Administrative Law Judge found that Bachelder's impairments did not meet or medically equal a listing and focused in particular on Listing 1.04. He noted that Dr. Ho opined that the Listing was met (Ex. 33F, R. 505), but rejected the opinion based on the absence of record evidence of (A) nerve root compression with positive straight leg raising test sitting and supine; (B) spinal arachnoiditis; or (C) spinal stenosis resulting in inability to ambulate effectively. (Finding 3, R. 12-13.) Bachelder argues that the Administrative Law Judge erred at Step 3 because he failed to give Dr. Ho's opinion controlling weight or contact Dr. Ho for

clarification to the extent it was unclear why Dr. Ho opined that Bachelder met the Listing.[5]
(Statement of Errors at 10.)

Bachelder's allegation of error concerns Listing 1.04(A) only. (Id. at 10-11.) Listing 1.04 is a musculoskeletal system listing related to disorders of the spine. The material portions of the Listing are as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 1.04 ("Appendix 1 § 1.04"). The Administrative Law Judge found that this listing was not satisfied because the record does not disclose evidence of nerve root compression with positive straight-leg raising tests sitting and supine. (Finding 3, R. 13.) In support of her counter-argument, Bachelder relies on Exhibit 33F, Dr. Ho's Treating Source Statement. In the Statement, Dr. Ho reported an opinion that Bachelder met Listing 1.04 and he placed a "C" next to 1.04 rather than an "A." (R. 505.) The Statement does not appear to support Bachelder's contention that she meets Listing 1.04(A). Moreover, Bachelder has failed

---

[5] Bachelder also argues that she met Listing 12.06 for anxiety related disorders (but not 12.04 for affective disorders that include mood disturbance) based on LCPC Danforth's answers to the mental impairment questionnaire. I have already explained why LCPC Danforth's impressions do not trigger an assessment of the severity of Bachelder's alleged mental impairment(s).

to cite record evidence demonstrating that the Administrative Law Judge erred when he found the record devoid of evidence of positive straight-leg raising tests both seated and supine.[6]

Alternatively, Bachelder argues that the Administrative Law Judge should have contacted Dr. Ho for clarification under the circumstances, citing 20 C.F.R. § 404.1512(e). That regulation requires the administrative law judge to contact a treating professional "[w]hen the evidence we receive" from that professional "is inadequate for us to determine whether you are disabled." The administrative law judge should seek

> additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e)(1). There is no indication in the Administrative Law Judge's decision that he found Dr. Ho's Treating Source Statement to contain a conflict or ambiguity, to not contain all necessary information, or to be based on other than acceptable techniques. The source statement appears complete. To meet a listed impairment the claimant's medical findings (*i.e.*, symptoms, signs and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Administrative Law Judge permissively found that the Listing was not met because he found that critical elements of the Listing are not demonstrated in the clinical findings reported in any of the medical records. (Finding 3, R. 12-13; Finding 4, R. 15.)

**C. Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's

---

[6] Bachelder points to a physical therapist's finding of a positive straight-leg raising test of the left leg in the supine position. (Ex. 18F, R. 384.) Subsequent examination by a physician indicated a negative test bilaterally. (Ex. 22F, R. 452.)

RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv). 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his residual functional capacity does not enable him to engage in his past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). Beyond proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003). This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4, where the claimant must demonstrate an inability to perform his or her past relevant work, if any. 68 Fed. Reg. 51,153, 51,155. See also 20 C.F.R. §§ 404.1512(c), 1545(a)(3), 416.912(c), 416.945(a)(3).

Bachelder assigns error at Step 4 to the Administrative Law Judge's RFC finding. Specifically, she claims "the ALJ fashioned his RFC based on an incomplete medical record." (Statement of Errors at 8.) The Administrative Law Judge found that Bachelder has a residual functional capacity to perform less than the full range of light work. (Finding 4, R. 13.) In reaching this finding, the Administrative Law Judge considered all of Bachelder's complaints concerning symptoms, including those that did not make it into his Step 2 finding as severe impairments. (R. 13.) He found that Bachelder's impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they contradict his RFC finding. (R. 14.) In addition to his credibility finding, the Administrative Law Judge relied on the Physical RFC Assessment completed by Dr. Donald Trumbull, M.D., a DDS consulting

10

physician. (Id.) Dr. Trumbull completed the Assessment December 14, 2007, based on medical records produced through October 2007. (Ex. 7F, R. 292.) The Trumbull Assessment is consistent with the Administrative Law Judge's RFC finding and is substantial evidence in support of the Administrative Law Judge's finding through at least October 2007.

Of course, the Administrative Law Judge's decision did not issue until April 8, 2009. Bachelder says that the Administrative Law Judge's much later decision is not supported by substantial evidence because the record continued to develop through January 2009, including new diagnoses of hip bursitis, plantar fasciitis, and intensified symptoms of low back pain, and that the Administrative Law Judge cannot resolve issues related to the limiting effects of these developments in the context of a credibility finding unless he also refers the file to a consulting physician. (Statement of Errors at 8-9.) Bachelder herself has not submitted a treating source statement addressed to her physical residual functional capacity other than Dr. Ho's one-page Treating Source Statement that Bachelder meets Listing 1.04(C).

The Administrative Law Judge credited Bachelder with a Step 2 finding that her severe impairments include bilateral hip bursitis and a Step 4 finding that her "medically determinable impairments" could be expected to produce the symptoms of which she complains, including the pain associated with degenerative disc disease, hip bursitis, and plantar fasciitis. However, because the limiting effects of the newly-diagnosed impairments all involve pain, he evaluated them in the context of a credibility finding. Ultimately, he decided that Bachelder was not credible regarding the severity of her pain. (R. 14.) He found her complaints "so extreme as to appear implausible." (R. 15.) He also found that evidence suggesting drug-seeking behavior works against Bachelder's credibility, that her activities of daily living are disproportionate to the degree of alleged limitation, and that clinical and radiological findings are unimpressive post-

surgery. (Id.) Bachelder assigns error to the Administrative Law Judge's failure to refer the new records to a consulting physician, in effect arguing that substantial evidence of a residual functional capacity to perform a subset of light work cannot exist in the absence of a consulting physician's assessment of the medical records associated with the hip bursitis and plantar fasciitis developments. Bachelder does not otherwise challenge the credibility determination.

There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96-7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case. This case presents a close question. On the one hand, all of the alleged new limitations arise from pain symptoms. On the other hand, they also involve new diagnosed impairments, including one the Administrative Law Judge found "severe" for purposes of Step 2. Although the Step 2 finding may reflect only a minimal degree of impairment, in the absence of substantial evidence to the contrary, I am inclined to presume that it has a significant bearing on Bachelder's ability to perform basic work activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Because the new diagnoses afford additional objective bases to explain new and additional physical limitations, I am persuaded that complete reliance on a layperson's credibility determination falls short of the

substantial evidence standard.[7] This calls for a remand of the claim for supplemental security income. For reasons that follow, however, it does not call for remand of the claim for disability insurance benefits.

**D.      Disability Insurance Benefits Expired Before the New Limitations Arose**

Bachelder's disability insurance under Title II expired December 31, 2007. The foregoing discussion concerning new evidence of disability and the need for further expert file review is based on medical evidence of impairments that came into existence after the expiration date. Hip bursitis and pain and enhanced back pain did not enter the record until 2008 and the plantar fasciitis and foot pain entered the picture at an even later date. (Ex. 17F, R. 377; Ex. 19F, R. 391, 395, 399, 417; Ex. 22F, R. 453.) The record contains substantial evidence that Bachelder was not disabled as of the date on which her Title II disability insurance expired. The December 2007 opinions of the DDS consultants, the evidence in support of the Administrative Law Judge's credibility assessment, and the vocational expert testimony provide substantial evidence in support of a finding that Bachelder was capable of performing light and sedentary unskilled jobs that exist in significant numbers in the national economy between her alleged onset date and the expiration of her insured status under Title II. For that reason, I recommend that the Court limit any order of remand to address only the claim for supplemental security income under Title XVI.

---

[7]      Bachelder must prove the existence of any RFC limitation beyond those found by the Administrative Law Judge. On the other hand, the Administrative Law Judge must support with substantial evidence his finding that Bachelder can work full-time in a competitive environment, even if it is only at the sedentary exertion level. The Commissioner's regulations also acknowledge a measure of dependence on "statements about what you can still do" made by consulting physicians. 20 C.F.R. §§ 404.1513(c), 416.913(c). Such referrals are an inherent part of the process. I am unable myself to articulate why bilateral hip bursitis and plantar fasciitis of the left foot would preclude the sedentary work identified by the vocational expert, even after a thorough review of the record. Nevertheless, I am also unable to state with confidence that, had Dr. Trumbull seen the later evidence, he would have assessed Bachelder's RFC as unchanged. Arguably, it should be the claimant's burden to submit expert opinion evidence of a changed RFC, id. §§ 404.1513(b)(6), 416.913(b)(6), but the regulations and the available case law do not appear to require it.

**Conclusion**

For reasons set forth above, I RECOMMEND that the Commissioner's decision be AFFIRMED with respect to Bachelder's claim under Title II and VACATED and REMANDED for further proceedings with respect to Bachelder's claim under Title XVI.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 19, 2010